404 So.2d 1115 (1981)
CITY OF ST. AUGUSTINE and Travelers Insurance Co., Appellants,
v.
Edward ALLEN, Appellee.
No. XX-77.
District Court of Appeal of Florida, First District.
October 13, 1981.
Rehearing Denied November 13, 1981.
Lloyd C. Leemis, of Boyd, Jenerette, Leemis & Staas, P.A., Jacksonville, for appellants.
Edward H. Hurt, of Hurt & Parrish, P.A., and Bill McCabe, of Shepherd, McCabe & Cooley, Orlando, for appellee.
ROBERT P. SMITH, Jr., Chief Judge.
The employer and carrier appeal from the deputy's order awarding permanent total disability benefits and finding that the two-year statute of limitation, which otherwise would bar the claim, was tolled by the employer's payment to Allen of wages in lieu of disability compensation within two *1116 years before the claim was filed. Section 440.19, Florida Statutes (1977). We find the claim was barred. Without reaching the contested issue of whether Allen's disability is compensable under Chapter 440, we reverse the order appealed and dismiss the claim.
Allen scraped a leg at work in his employment by the City of St. Augustine on June 17, 1977. Notice of the injury was promptly given. Allen lost no time from work immediately but healing was slow and problematic because, it was later determined, Allen was diabetic. The carrier voluntarily paid bills for medical treatment from July through November 1977, and when the wound became infected, absenting Allen from work for about ten days in late August and early September, the carrier voluntarily wrote checks for temporary total disability benefits. Allen endorsed those checks over to the City at its request, for the City continued paying Allen his full wages.
Though his leg lesions had not healed, Allen returned to regular work on September 8 and he worked as usual for two months. On November 7, he was hospitalized for treatment of swelling and ulcers on both legs. Then learning the extent of Allen's diabetic condition, the carrier paid no more medical bills after November 16 and refused to renew payment of disability benefits, citing Allen's pre-existing diabetes as the cause of his difficulties. The City's personnel manager advised Allen that workers' compensation was no longer available and counseled him concerning the use of his extensive earned sick leave, the possibility of benefits from an employees' disability insurance program (which didn't materialize), and, finally, retirement as of July 1978. Allen did not work after November 25, 1977 and his leg lesions were debrided or grafted under general anesthetic in December 1977 and repeatedly in 1978 through April. Allen continued to receive his regular paycheck during that period, and the payments were described in the City's record, though not on the checks themselves, as salary payments to an employee on sick leave.
In December 1978, after personality changes and loss of memory and balance, Allen was neurologically diagnosed as suffering organic brain damage. In January 1980, more than two years after the carrier stopped paying Allen temporary total disability compensation in September 1977 and stopped paying medical benefits in November 1977, an attorney filed a claim in Allen's behalf for permanent total disability benefits. Allen was unable to testify at the hearing held in April 1980 because he was disturbed mentally and completely disabled physically. The deputy found those conditions, as well as the previous leg swelling and ulcers, were the result of the industrial injury aggravating the diabetes. The deputy awarded benefits including permanent total disability payments, finding that "the most reasonable and logical cause" for Allen's brain damage "is the hospitalization in December, 1977." The deputy did not further elaborate her "logical cause" finding.
The carrier having stopped payment to Allen of any sort of workers' compensation benefits more than two years before his claim was finally filed on January 15, 1980, the claim would indisputably have been barred by Section 440.19(1)(a)[1] had the City of St. Augustine not continued paying Allen's wages without interruption until July 1978, when he was retired. The deputy found:
I further find that the Statute of Limitations defense is not applicable in this case in that the City of St. Augustine during the summer of 1977 paid the Claimant's full salary whether he was working or not, and maintained this policy of full *1117 salary until July 1, 1978, and I find these payments to be payments in lieu of compensation.
In Florida as elsewhere, when compensation for disability or remedial treatment is furnished by the employer and then is terminated, the limitation period on claims for additional compensation begins to run, the statute specifies, from "the last payment of compensation" or "the last remedial treatment furnished by the employer." But in Florida as elsewhere judicial decisions have ameliorated that bar by postponing the limitation period during the time the employer pays the employee his wages in lieu of compensation payable under Chapter 440. E.g., Townsley v. Miami Roofing and Sheet Metal Co., 79 So.2d 785 (Fla. 1955); Chemstrand Co. v. Enfinger, 231 So.2d 816 (Fla. 1970).
Deciding that wages were paid in lieu of compensation, or not, and by that conception granting or barring as stale otherwise meritorious compensation claims, is a hazardous rational exercise. Presumably the Chapter 440 limitation period is like limitation periods generally, intended to guard against the possibility of lost witnesses, discarded records, faded memories, and the accompanying prejudice to potential defenses of the employer and carrier. A limitation statute justifies barring stale but otherwise meritorious claims because filing a claim within an ample prescribed period is so simply done, and is so decisive as notice to prepare one's defenses, that claimant's delay beyond that period is presumed to have been prejudicial.
When it can be shown that the employer and carrier didn't even know for a long time that the employee suffered an arguably compensable industrial accident, a decision to bar the stale claim, filed beyond the limitation period, is in good harmony with the conventional purposes of limitation statutes. But that isn't the case here, or in any case in which workers' compensation benefits undeniably were provided by a carrier acknowledging at the outset a covered injury; and to some extent the claimant's giving of notice of the accident, as distinguished from his filing of a claim, satisfies purposes of a limitations statute. Here, in any event, the employer and carrier knew there was a compensable injury, paid compensation for a time, and then made an informed decision to stop further payments. The employer and carrier's defensive proofs apparently did not suffer from the passage of time; paradoxically, it was claimant whose testimony time ravaged by progressive disease.
So there are undeniable incentives to find that the bar of the limitation statute was trumped by the City's payment of wages to Allen in lieu of Chapter 440 compensation within two years before his claim was filed in January 1980. And the trumping doctrine is conveniently malleable: everybody must agree that Allen was paid wages in lieu of compensation in August and September 1977, when he was paid regular wages for no work and he endorsed back to the City the carrier's disability compensation checks; and from Allen's point of view, at least, the wages he continued to receive for no work, until he retired in July 1978, were also in lieu of the Chapter 440 compensation he asserts and the deputy now has found he was contemporaneously due, but for the wages paid. Allen would say he should not be required to have ungraciously demanded, from an employer who already was paying him full wages for no work, Chapter 440 disability compensation as well; yet that is the consequence of holding that the limitation statute ran unabated after November 1977 and throughout eight months of salaried sick leave until his retirement. Larson aptly described Allen's dilemma in these circumstances:
Suppose the employer voluntarily pays wages for eleven months, and then gets tired of paying a disabled man and stops the wages. The claimant may be in a position of having had no occasion to make claim sooner, and yet of having an almost impossibly short time left of his claim period in which to discover what has happened and assert his formal rights.
3 A. Larson, Workmen's Compensation Law § 78.43(c) (1976).
*1118 These apparent snares notwithstanding, and despite only faint praise for the rule,[2] the Florida decisions including Chemstrand appear to have interpreted Section 440.19(1)(a) as liberally as that statute permits, allowing the payment of wages to trump the limitation statute only if the payment was "intended to be made on account of compensation liability, or if the employee reasonably believed it was so intended." Chemstrand, 231 So.2d at 818-19, quoting Larson. Thus, whatever may have induced the injured employee not to press his claim, and whatever he himself may have thought about his entitlement to Chapter 440 benefits, the two-year bar of the statute applies unless the employer intended, or the employee reasonably believed the employer intended, to pay wages in lieu of Chapter 440 disability benefits  not as sick pay, not as a gratuity, not as the act of enlightened labor management, but specifically in lieu of Chapter 440 benefits considered to be due.
In this case the employer and carrier's testimony shows without contradiction that Allen's Chapter 440 benefits were terminated no later than November 1977 precisely because the employer and carrier considered, correctly or not, that no further benefits were payable. They testified, and Allen was in no position or condition to deny, that Allen himself was so advised. That being so, the continuing wage payments were not intended by the employer as in lieu of Chapter 440 compensation, and Allen could not reasonably have thought the employer so regarded those payments. Allen being thenceforth on notice that the employer and carrier denied further workers' compensation coverage, there was no further reason to stay the running of the statute. Allen mistakenly accepted the surcease of continued wages without preserving by asserting his compensation claim; and after two years his claim was barred.
REVERSED.
JOANOS and THOMPSON, JJ., concur.
NOTES
[1] Section 440.19(1)(a) provides:

The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within 2 years after the time of injury, except that if payment of compensation has been made or remedial treatment has been furnished by the employer without an award on account of such injury a claim may be filed within 2 years after the date of the last payment of compensation or after the date of the last remedial treatment furnished by the employer.
[2] Larson, § 78.43(c) at p. 15-139, characterizes the rule as "theoretically correct" but "difficult to apply with perfect accuracy." See Chemstrand Co., supra, 231 So.2d at 818.